CASE 94—PETITION ORDINARY—SEPTEMBER 14.

# Long v. Bowen.

APPEAL FROM NICHOLAS CIRCUIT COURT.

THE CONFINEMENT OF A PUBLIC OFFICER IN AN INSANE ASYLUM pursuant to a judicial finding that he is a lunatic, creates a vacancy in the office within the meaning of article 6, chapter 33 of the General Statutes, and an election having been held to fill the vacancy, the former incumbent of the office can not, upon being discharged from the asylum as cured, claim the right to have the office restored to him.

NORVELL AND KENNEDY & SON FOR APPELLANT.

1. The person entitled to an office can not bring an action to prevent usurpation of the office unless he brings it during the three months next after the usurpation. After that time it must be brought by the Commonwealth's attorney, and the person entitled to the office can not sue to recover the fees until it has first been adjudged in the action brought by the Commonwealth's attorney that he is entitled to the office. (Civil Code, secs. 480, 483–488.)

2. Where an officer has been adjudged a lunatic, there is a "vacancy in office" within the meaning of sec. 1, art. 6, chap. 33, Gen. Stats (McKee and wife v. Thompson, 5 Bush, 687.)

The modes of creating a vacancy in office recognized by the Constitution are not exclusive of all others. (Constitution of 1850, art. 6, sec. 7; art. 4, secs. 3, 35, 36; art. 5, sec. 3.)

HANSON KENNEDY AND ROSS & OWENS FOR APPELLEE.

1. The Code of Practice does not impose any limitation as to the time within which an action of this character may be brought. (Civil Code, secs. 483, 484, 488.)

2. The power of the county court to declare a "vacancy in office" is an executive and not a judicial power. (Justices of Spencer County Court v. Harcourt, 4 B. M., 500; Gilbert v. Bartlett, 9 Bush, 53.)

3. The insanity of an assessor during his term of office does not create a "vacancy in office" within the meaning of the statute. The words, "or otherwise," used in the statute, include only such vacancies as may occur under these provisions of the Constitution which provide for the removal of officers. (Gen. Stats., chap. 33, art. 6, sec. 1; Constitution of 1850, art. 5. sec. 3; *Idem*, art. 4, sec. 36; Lowe v. Commonwealth, 3 Met, 237; Bartly v. Fraine, 4 Bush, 375.)

4. A man who is insane is not on that account to be deemed "civilly

dead." (Chitty's Blackstone, vol. 1, pp. 95-96; Bouvier's Law Dic-
tionary, vol. 2, word "Right;" Avery v. Everett, and notes thereto,
6 Am. St. Rep., 368-383; Rankin's heirs v. Rankin's ex'ors, 6 Mon.,
531.)

5. Even if lunacy will create a "vacancy in office," the order of the
county court declaring the office of assessor vacant was prematurely
made. The court in June, 1889, had no legal right to presume that
appellee would be of unsound mind on the 15th of September follow-
ing, the time when his duties were to commence. (Montgomery v.
Commonwealth, 88 Ky., 509.)

CHIEF JUSTICE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee, in August, 1886, was elected assessor
of Nicholas county, and qualified and entered upon
the duties of the office, and continued to discharge
the duties of the office until the 27th of April, 1889,
when he was, by proper proceedings and by a court
of competent jurisdiction, adjudged a lunatic, and
committed to the Eastern Kentucky Lunatic Asylum,
where he remained a lunatic until the 27th of August,
1889, when, as it is presumed, he was discharged as
cured. In the meantime, by proper proceedings, the
office of assessor was, by the county court, declared
to be vacant, and an election to fill the vacancy was
ordered and held on the first Monday in August,
1889, which resulted in the election and qualification
of the appellant, who entered upon the duties of the
office.

After appellee returned from the asylum, he de-
manded the books of the office from the appellant,
but he refused to deliver them, and made the assess-
ment of the county for that year. The appellee by
this action charges that the appellant had usurped the
office, and asks judgment against him for the fees of
the office that he had received. The lower court sus-

tained his contention. and the appellant has appealed.
The question to be decided is, was there a vacancy in
the office at the time it was so declared by the county
court in the sense of chapter 33, article 6, which is
as follows: "The term vacancy in office, or equivalent
phrase, as used in this article, means such as exists
when there is an unexpired part of a term of office
without a lawful incumbent therein, or when the
person elected or appointed to an office fails to qualify
according to law, or when there has been no election
to fill the office at the time appointed by law.   It ap-
plies whether the vacancy is occasioned by death, res-
ignation, removal from the State, county or district,
or otherwise."

The fifth section provides that the county court shall
have power, in case of a vacancy in the office of as-
sessor, sheriff, .&c., to fill it until the next August
election, at which time there shall be an election to fill
the vacancy.

The question is, did the judical finding that the
appellee was a lunatic, and his confinement in the
insane asylum in accordance with such finding and
while the finding was in force, create a vacancy in
the office of assessor, and authorize an election to
be held to fill the vacancy? The judgment of the
court that the appellant was a lunatic, and that he
should be confined in the lunatic asylum was, in
effect, that the confinement should be that of phy-
sical restraint, and that he should be deprived of
the right to transact any business or to take charge
of and control his estate, but the management and
control of the same should be confided to some pru-

dent person to be appointed by the court; also that he should have no standing in court except through a committee, &c.; also that he should be deprived of the power to contract or be contracted with; also to deprive him of the power to control his own family, or to do other things that a sane person has the legal right to do.

The appellee's status was thus judicially determined, which was in force at the time of the election and qualification of the appellant. The appellee, so far as these things were concerned, or of discharging the duties of the office, or of performing any other civil duties, was civilly dead, not in the sense of a punishment but as a protection.

It seems, from what has been said, that the statute *supra* should be construed to mean not only resignation, removal from the State, county or district, whereby he abandons his official duties, and the county loses control over him, but death, natural or civil; the latter, by the judgment of the court, depriving him of the right and power to execute the duties of the office, as well as the former, creates a vacancy in the office. It seems that the expression "or otherwise" has reference to such other things as, by judicial determination at least, deprives the incumbent of the right and power to discharge the duties of the office.

The confinement of the appellant in the insane asylum under the writ of lunacy certainly deprived him of the power to execute the duties of the office.

The judgment is reversed, and cause remanded with directions for proceedings consistent with this opinion.